UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

CHILLICOTHE CHIROPRACTIC
AND WELLNESS CENTER,

      Plaintiff,

                                                 Civil Action 2:12-cv-330
   v.                                        Judge Michael H. Watson
                                                 Magistrate Judge Elizabeth P. Deavers

KATHLEEN SIBELIUS
SECRETARY, UNITED STATES
DEPARTMENT OF HEALTH AND
HUMAN SERVICES,

      Defendant.

**REPORT AND RECOMMENDATION**

      Plaintiff, Chillicothe Chiropractic and Wellness Center, a Medicare provider, seeks judicial review of a determination of the Department of Health and Human Services (the "Secretary") that Plaintiff is liable for Medicare overpayments.  Jurisdiction is proper under 42 U.S.C. §§ 1395ff(b) and 405(g) and 42 C.F.R. § 405.1136 as the amount in controversy exceeds $1,350.  This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Brief in Support of its Request that the Decision of the Medicare Appeals Council be Reversed and that the Decision of the Administrative Law Judge be Fully Reinstated (ECF No. 28), the Secretary's Memorandum in Opposition (ECF No. 31), Plaintiff's Reply (ECF No. 34), and the Administrative Record (ECF No. 9.)  For the reasons that follow, it is **RECOMMENDED** that the Secretary's final decision be **AFFIRMED**.

I.     BACKGROUND

A.     **Medicare Statutory and Regulatory Framework**

The Medicare program, Title XVIII of the Social Security Act, 42 U.S.C. § 1395 *et seq.*, is a federal medical insurance program that pays for covered medical care for eligible individuals who are at least sixty-five years of age or who have certain disabilities.  This case involves Medicare Part B, which provides coverage for various services, including certain chiropractic care.  42 U.S.C. §§ 1395k(a) and 1395x(r)(5).  Medicare coverage is limited to those services that are "reasonable and necessary."  42 U.S.C. § 1395y(a)(1)(A).  In addition, a provider must "furnish such information as may be necessary in order to determine the amounts due . . . ."  42 U.S.C. § 1395l(e).  Medicare coverage for chiropractic care is further limited as follows:

> (b) Limitations on services.
>
> > (1) Medicare Part B pays only for a chiropractor's manual manipulation of the spine to correct a subluxation if the subluxation has resulted in a neuromusculoskeletal condition for which manual manipulation is appropriate treatment.
> >
> > (2) Medicare Part B does not pay for X-rays or other diagnostic or therapeutic services furnished or ordered by a chiropractor.

42 C.F.R. § 410.20(b).

The Centers for Medicare & Medicaid Services ("CMS"), an agency within the Department of Health and Human Services, administers and oversees the Medicare program.  In furtherance of these duties, CMS issued The Medicare Benefit Policy Manual (the "Policy Manual"), which details the documentation prerequisites for Medicare coverage of chiropractic care. Medicare Benefit Policy Manual, Ch. 15, http://www.cms.gov/manuals/downloads/bp102c15.pdf.  Section 240.1.2 of the Policy Manual states that any chiropractic subluxation may be demonstrated by either an x-ray or by a physical exam that satisfies certain

documentation requirements both at the initial and any subsequent visits. *Id*. at § 240.1.2. Section 240.1.3 further requires that any subluxation "have a direct therapeutic relationship" to a patient's "significant health problem in the form of a neuromusculoskeletal condition necessitating treatment." *Id*. at § 240.1.3.

In order to receive payment for its services, a Medicare provider such as Plaintiff submits a reimbursement claim. To expedite claims processing, the Secretary reimburses providers for services before reviewing the medical records associated with the claims. Pursuant to the Medicare Integrity Program, the Secretary utilizes Medicare Program Safeguard Contractors ("PSCs") who review and audit providers to ensure that payments are made properly. 42 U.S.C. § 1395ddd(a) and (b). Payments that the PSC determines were improper are subject to recovery. 42 U.S.C. § 1395(f)(7).

**B.     Procedural History**

This case involves the post-payment audit conducted by PSC AdvanceMed of certain claims Plaintiff submitted to Medicare. On December 9, 2009, Advance Med notified Plaintiff of its determination that the Secretary overpaid Plaintiff in the amount of $90,628. AdvanceMed premised its determination on a statistical sampling of 100 fully or partially paid claims representing 78 beneficiaries. Upon a detailed review of these claims, AdvanceMed determined that every claim was missing some requisite documentation. Citing provisions of the Policy Manual, AdvanceMed denied all 100 claims for at least two reasons, with some of the claims denied for four reasons. The actual overpayment attributable to the sample was $2,541.44. AdvanceMed extrapolated the sample findings to the entire universe of Plaintiff's claims to arrive at an estimated overpayment of $90,628.

Upon receipt of a demand letter from Palmetto GBA, an administrative contractor for

CMS, Plaintiff timely requested a redetermination. Palmetto GBA upheld the overpayment demand. Plaintiff subsequently sought reconsideration, including with its request a forensic analysis performed by Tian Zheng, Ph.D. First Coast Service Options, a Medicare Qualified Independent Contractor, conducted the review and affirmed the overpayment determination. Plaintiff sought a hearing before an administrative law judge.

Administrative Law Judge Michael D. Bartko (the "ALJ") conducted an in-person hearing in June 2011, with a follow-up telephonic hearing in July 2011. Dr. George W. Cobb testified on behalf of Plaintiff and offered his opinions regarding Dr. Zheng's forensic analysis. Plaintiff also offered testimony regarding each of the 78 beneficiaries included in AdvancMed's sample. On September 29, 2011, the ALJ issued a partially favorable decision. (ALJ Decision, ECF No. 2-2.) The ALJ concluded that some of the claims in the sample satisfied Medicare's coverage requirements. The ALJ further found the statistical sample to be invalid. With regard to this finding, the ALJ offered the following explanation:

> Dr. Zheng evaluated the sampling methodology and overpayment estimation and concluded that the methodologies employed by AdvanceMed are not in compliance with Medicare. The ALJ agrees with the findings of Dr. Zheng. The methodology of the statistical sampling and subsequent extrapolation are not valid pursuant to Medicare law and regulations. The extrapolation of overpayment to the universal set of claims exceeds the total amount paid to the Appellant by Medicare for said claims.

(*Id*. at 75.) The ALJ therefore limited the amount of the overpayment to the beneficiary-specific claims that he had found did not satisfy the Medicare coverage requirements, explaining as follows: "[b]ecause the statistical sample is not valid, the overpayments contained in this decision cannot be extrapolated to the population." (*Id*. at 76.)

On November 25, 2011, CMS, through its contractor Q2 Administrators, LLC, referred the matter to the Medicare Appeals Council (the "MAC") for own-motion review. (R. at 29–44.)

4

In this referral, CMS asserted that the ALJ committed an "error of law material to the outcome of the claim" in invalidating the statistical sample. (*Id.*) Citing Health Care Financing Administrative ("HCFA") Ruling 86-1 and the Medicare Program Integrity Manual ("MPIM"), CMS maintained that the ALJ erred "in invalidating the entire extrapolated overpayment on the bases that the requested point estimate is higher than the amount initially paid." (R. at 38.) According to CMS, the ALJ should have instead "lower[ed] the overpayment demand from the point estimate to the amount actually paid. (*i.e.*, from $90,628 to $90,344.92)." (*Id.*) CMS further maintained that this particular issue had, however, been rendered moot in light of the ALJ's determination that some of the claims had satisfied Medicare's coverage requirements. (*Id.*)

The MAC reviewed the ALJ's ruling on its own motion pursuant to 42 C.F.R. § 405.1110 based upon its conclusion that the ALJ's decision contained "an error of law material to the outcome of the claim." (R. at 3.) In its February 12, 2012 decision, the MAC relied upon HCFA Ruling 86-1 to conclude that the ALJ erred in invalidating the statistical sample. (R. at 14–24.) The MAC found that Plaintiff had not satisfied its burden under HCFA Ruling 86-1 to demonstrate that the statistical sampling method was invalid under either Ruling 86-1 or the MPIM. (R. at 15–19.) The MAC further determined that CMS had erred in assessing the estimated overpayment rather than the actual overpayment, but agreed with CMS that the ALJ's conclusion that some of the sampled claims were properly paid rendered the issue moot. (R. at 19–20.) The MAC determined that overpayment should be assessed at the lower limit of a one-sided, 90% confidence interval, reasoning as follows:

> Nonetheless, as noted earlier in this decision, the overpayment is no longer 100% of the paid amount given the subsequent findings of proper payment on many of the sampled claims. Thus, the overpayment must be re-extrapolated on implementation

5

> based on the partially favorable coverage findings made by the ALJ and at lower levels of review. The recalculation will inevitably change the point estimate, standard deviation, and error rate. The Council thus finds that, given the uncertainty of the degree of these changes at this point, the overpayment should be assessed following re-extrapolation at the lower bound of a one-sided, 90% confidence interval. This default methodology is embraced by the MPIM as a conservative method that works to the advantage of the supplier. *See* MPIM, Ch. 8, § 8.4.5.1.

(R. at 20.)

Plaintiff timely appealed the MAC's decision to this Court under 42 C.F.R. § 405.1136, seeking reversal of the MAC's decision and reinstatement of the ALJ's decision. (ECF No. 2.) In its opening brief, Plaintiff argued that the MAC exceeded its jurisdictional authority when it reviewed the ALJ's decision. (ECF No. 15.) Plaintiff alternatively argued that it had carried its burden to demonstrate that the sampling method the Secretary utilized was invalid such that this Court should overturn the MAC's decision and reinstate the ALJ's decision.

Upon review of the parties' briefing, the Court determined that neither party had properly interpreted the review provisions set forth in 42 C.F.R. § 1110. (Sept. 30, 2013 Order 6, ECF No. 22.) The Court explained as follows:

> The parties' agreed interpretation contradicts the language of § 405.1110(c)(2). That section begins "[t]he MAC *will accept for review if* the decision or dismissal contains an error of law . . . ." *Id*. § 405.1110(c)(2) (emphasis added). As such, it only establishes the standard of review MAC applies when deciding whether to accept a case for review on its own motion. In fact, Defendant misquotes the language of the rule. The rule does not say that the MAC's scope of review will be limited once it has accepted review; rather, the rule concludes, "[i]n deciding whether to accept review, the MAC will limit its consideration of the ALJ's action to those exceptions raised by CMS." *Id*. § 405.1110(c)(2). Once a case is accepted for review, the MAC's review is *de novo*. *Id*. § 405.1100(c); *Int'l Rehab. Scis. Inc. v. Sebelius*, 688 F.3d 994, 997 (9th Cir. 2012). Thus, read in conjunction, § 405.1110(c)(2) and § 405.1100(c) mean that when CMS has referred a case to the MAC for review but did not participate in the ALJ proceedings or appear as a party, the MAC will only accept review if, considering the exceptions raised by CMS, the exceptions show the ALJ decision contains an error of law material to the outcome of the case. But once it has accepted review of a case, the substantive review is *de*

6

*novo*.

> Thus, the proper inquiry in this case is not whether MAC exceeded its jurisdictional authority regarding its ultimate analysis of the ALJ's decision but rather whether the MAC exceeded its jurisdictional authority when it accepted the case for review.

(*Id*. at 6–7 (internal footnote omitted).)

The Court concluded that "[t]he parties should have an opportunity to brief the proper issue, if Plaintiff decides to pursue it." (*Id*. at 7.) The Court consequently struck the parties' briefing and directed Plaintiff to "file a new brief if it elects to proceed with prosecuting this case." (*Id*.) The Court limited the scope of any such briefing as follows:

> The intent of this order is to prevent Plaintiff from raising new arguments in any newly filed brief and rather to limit the brief to the properly reframed arguments raised in the initial brief. Thus, Plaintiff may argue only that the MAC exceeded its jurisdictional authority when it accepted the ALJ's decision for review and that the MAC's decision should otherwise be overturned because either the factual findings underlying the decision are not supported by substantial evidence or the decision fails to apply the correct legal standards.

(*Id*.)

In the most recent round of briefing, Plaintiff again asserts that the MAC exceeded its jurisdictional authority under 42 C.F.R. § 405.1110. In support of this assertion, Plaintiff states as follows:

> The ALJ was well within his discretion to rule as he did after a review of Appellant's statistical expert's report and extensive testimony. The testimony of Appellant's statistical expert lasted approximately 45 minutes. Accordingly, the ALJ's decision contains no error of law material to the outcome of the case. Therefore the MAC exceeded its jurisdictional authority when it accepted the ALJ's Decision for review.

(Pl.'s Brief 3–4, ECF No. 28.) Plaintiff alternatively submits that substantial evidence does not support the MAC's decision and that the MAC failed to apply the correct legal standards. More specifically, Plaintiff contends that the MAC incorrectly concluded that the ALJ failed to comply

7

with 42 C.F.R. § 405.1046(a) and further erroneously concluded that Plaintiff had not carried its burden to invalidate CMS' sampling methodology. Plaintiff asks this Court to overturn the MAC's decision, reinstate the ALJ's decision, and award it attorneys' fees pursuant to the Equal Access to Justice Act.

The Secretary opposes Plaintiff's request that the MAC's decision be reversed. The Secretary maintains that the MAC acted within its authority under § 405.1110 when it accepted review of the ALJ's decision based on an error of law CMS identified in its request for own-motion review. The Secretary further posits that after accepting review, the MAC properly reviewed the evidence *de novo* in deciding to reverse the decision of the ALJ. The Secretary therefore concludes that this Court should affirm the MAC's decision because it is supported by substantial evidence.

## II. STANDARD OF REVIEW

As set forth above, this Court has jurisdiction over this appeal under 42 U.S.C. § 1395ff(b), which entitles an individual or entity to judicial review of the final decision of the Secretary under 42 U.S.C. § 405(g). 42 U.S.C. § 1395ff(b); *Heckler v. Ringer*, 466 U.S. 602, 615 (1984) (Section 405(g) provides the "sole avenue for judicial review for 'all claims arising under' the Medicare Act"). The standard of review for judicial review of Medicare cases is identical to that of Social Security cases. *See* 42 U.S.C. § 1395w–22(g)(5). When reviewing a case under the Medicare Act or Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by

substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of [the Secretary's] decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Univ. Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the [the Secretary's] decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). With these standards in mind, the Undersigned now turns to Plaintiff's arguments in favor of reversal.

## III.   ANALYSIS

The Undersigned concludes that the MAC acted within its authority under § 405.1110 when it accepted review of the ALJ's decision and that substantial evidence supports the MAC's decision. The Undersigned addresses each of these conclusions in turn.

### A.   The MAC Did Not Exceed its Jurisdictional Authority

Plaintiff's assertion that the MAC exceeded its jurisdictional authority because the ALJ "was well within his discretion to rule as he did," (Pl.'s Brief 3–4, ECF No. 28), demonstrates its misapprehension of 42 C.F.R. § 405.1110 and this Court's September 30, 2013 Order. In that Order, the Court set forth the governing authority as follows:

>A party to an ALJ hearing may request MAC review upon filing a written request. 42 C.F.R. § 405.1102(a)(1). MAC may also review cases on its own motion. *Id*. § 405.1110. CMS or contractors may also refer a case to the MAC in order for the MAC to consider whether to review the case on its own motion.
>
>Referral is governed by § 405.1110, which states in relevant part:
>
>>(1) CMS or any of its contractors may refer a case to the MAC if, in their view, the decision or dismissal contains an error of law material to the outcome of the claim or presents a broad policy or procedural issue that may affect the public interest.
>
>42 C.F.R. § 405.1110(b)(1). When deciding whether to accept review, the standard of review the MAC applies if CMS did not participate in the ALJ proceedings or appear as a party, as was the case here, is described later in the section:
>
>>The MAC will accept review if the decision or dismissal contains an error of law material to the outcome of the case or presents a broad policy or procedural issue that may affect the general public interest. In deciding whether to accept review, the MAC will limit its consideration of the ALJ's action to those exceptions raised by CMS.
>
>*Id*. § 405.1110(c)(2). Once the MAC accepts a case for review, review is *de novo*. *Id*. § 405.1100(c). The MAC may "adopt, modify, or reverse the decision or dismissal, may remand the case to an ALJ for further proceedings or may dismiss a hearing request." *Id*. § 405.1110(d); *see also* § 405.1128.

(Sept. 30, 2013 Order 3–4, ECF No. 22.)

Applying the foregoing authority, because the MAC's decision does not identify a policy or procedural issue affecting general public interest that prompted it to accept review, the issue of whether the MAC properly accepted review turns on whether the MAC concluded that CMS identified an error of law (as contrasted with a incorrect factual determination) material to the outcome of the case. In its Notice of Own Motion and Decision, MAC states as follows: "In deciding to review the ALJ's decision, the Council has considered the memorandum from [CMS] dated November 25, 2011 and [the Plaintiff's] response dated December 19, 2011." (R. at 1.) In its Decision, the MAC considered CMS' assertion that the ALJ had committed an error of law

10

material to the outcome of the claim in invalidating the sample and extrapolated overpayment. The MAC then concluded that it "decided, on its own motion, to review the [ALJ's] decision dated September 29, 2011, because there is an error of law material to the outcome of the claim." (R. at 1, 8–9.). Consistently, the MAC ultimately concluded that the ALJ did, in fact, commit a material error of law in failing to correctly apply the applicable program law and guidelines, an error which resulted in the ALJ's improper invalidation of the sample. (R. at 3–21.) Under these circumstances, the MAC appropriately accepted review of the ALJ's decision. *See Doctors Testing Center, LLC II v. United States Dep't of Health & Human Servs.*, No. 4:11-cv-857, 2014 WL 112119, at *4 (E.D. Ark. Jan. 10, 2014) (rejecting the plaintiff's contention that the MAC exceeded its authority in reviewing the ALJ's decision *de novo* where the CMS asserted that the ALJ failed to correctly apply a regulatory provision and the MAC agreed).

Plaintiff's contention that the MAC exceeded its jurisdictional authority because the ALJ made a discretionary call after thoroughly considering expert reports and testimony misses the mark. Although the ALJ is afforded with discretion to make findings of fact and credibility determinations, an ALJ must still apply proper legal standards. *Rabbers*, 582 F.3d at 651. Because the MAC agreed with CMS that the ALJ committed a material error of law, it is **RECOMMENDED** that the Court reject Plaintiff's contention that the MAC exceeded its jurisdictional authority in accepting review.

**B.     Substantial Evidence Supports the MAC's Decision**

As the Court explained in its September 30, 2013 Order, because the MAC accepted the case for review, the MAC's review is *de novo*. (Sept. 30, 2013 Order 4, ECF No. 22); 42 C.F.R. § 405.1100(c); 42 U.S.C. § 1395ff(d)(2)(B). Thus, in ascertaining whether substantial evidence supports the Secretary's decision, the Court reviews only the MAC's findings. *See John Balko*

*& Assoc., Inc., v. Sec'y of Health & Human Servs.*, No. 13-1568, --- F. App'x ----, 2014 WL 542262, at *5 (3d Cir. Feb. 12, 2014) ("[I]nasmuch as we are concerned on this appeal . . . with a review of MAC's decision, we do not review the ALJ's findings, and [the plaintiff's] arguments addressing those findings are irrelevant."). For this reason, Plaintiff's contention that the MAC erroneously attacked the sufficiency of detail in the ALJ's analysis is not relevant to this Court's determination of whether substantial evidence supports the Secretary's decision.

Plaintiff's second contention, that the MAC erroneously concluded that Plaintiff failed to carry its burden to prove CMS's sample methodology invalid, is equally unpersuasive. In support of this contention, Plaintiff states as follows:

> The MAC also criticized Plaintiff arguing it did not carry its burden to prove CMS' sampling method is invalid. That is not true. Plaintiff carried its burden. The MAC correctly indicated, "[b]ased on the applicable program guidance, an appellant bears the burden to demonstrate that a particular sampling method is invalid." *See*, MAC decision, p. 13. Plaintiff went to great pains to satisfy this requirement. It hired Dr. Zheng and Dr. Cobb to provide both written and oral testimony proving the sampling method was invalid. Plaintiff's experts did in fact prove CMS' sampling methods were invalid. As stated, the ALJ had multiple questions for Dr. Cobb. And, CMS did not even show up at the ALJ hearing to provide its own testimony or to rebut Dr. Cobb and Dr. Zheng's testimony.
>
> Interestingly, the MAC essentially admits plaintiff fulfilled its burden when it indicates, "[t]he appellant has raised some theoretical problems with the sampling methodology and extrapolation which may or may not have had an actual bearing on the outcome of the assessment in this case." *See*, MAC decision, p. 13. The MAC clearly engaged in analysis far beyond its jurisdictional scope per CMS' decision not to appear at the hearing. Even a cursory review of the MAC's decision reveals it far overstepped its bounds. And, pursuant to Dr. Zheng's report and Dr. Cobb's testimony, it is clear that plaintiff did far more than raise some theoretical problems with the sampling methodology and extrapolation. Plaintiff's experts definitively found both to be invalid.

(Pl.'s Br. 5, ECF No. 28.) The Undersigned disagrees.

Plaintiff's characterization of the MAC's acknowledgment that Plaintiff's experts raised some theoretical problems with the sampling methodology as an admission that Plaintiff met its

12

burden is incorrect.  Instead, read in context, the MAC explained why Plaintiff's experts' raising of theoretical problems did not suffice to meet Plaintiff's burden to show that the PSC's sampling methodology resulted in unfairness and prejudice to its interests.  (R. at 15–16.)  The MAC explained that Plaintiff's "theory of more widespread legal error [beyond the use of the point estimate to establish the amount of extrapolated payment] as set out in Dr. Zheng's Forensic Analysis and supplemented by Dr. Cobb's testimony is not supported by the applicable sampling authorities."  (R. at 15.)  The MAC proceeded to laboriously explain why each of the bases upon which Drs. Zheng and Cobb relied to conclude that the PSC's sampling methodology was invalid reflected a misapprehension and misapplication of applicable program law and guidelines.  (*See* R. at 15–18.)  Because the MAC concluded that the error lied in the PSC's choice of a "point estimate" rather than in its sampling methodology, it upheld the validity of the sample and concluded that a "revised actual overpayment should be extrapolated to the universe of claims."  (R. at 19–20.)  Upon review of the record and the relevant authority, the Undersigned concludes that the MAC applied the appropriate legal standards in making its determination and that substantial evidence supports the determination.  It is therefore **RECOMMENDED** that the Court reject Plaintiff's alternative contention that substantial evidence does not support the MAC's decision.

## IV.   RECOMMENDED DISPOSITION

For the reasons set forth above, it is **RECOMMENDED** that the Secretary's final decision be **AFFIRMED**.

**PROCEDURE ON OBJECTIONS**

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Response to objections must be filed within fourteen (14) days after being served with a copy.  Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court.  *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation).  Even when timely objections are filed, appellate review of issues not raised in those objections is waived.  *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).


Date: April 8, 2014                                /s/ *Elizabeth A. Preston Deavers*
                                                                Elizabeth A. Preston Deavers
                                                                United States Magistrate Judge